IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | |
| | : | |
| v. | : | CRIMINAL ACTION NO. 20-189 |
| | : | CIVIL ACTION NO. 23-966 |
| JOSE GALINDO | : | |

## **MEMORANDUM OPINION**

Smith, J.                                                                                                October 2, 2023

Currently before the court is a motion under 28 U.S.C. § 2255 to vacate, set aside, or correct sentence filed by a *pro se* movant who pleaded guilty to conspiring to commit mail and wire fraud, conspiring to commit access device fraud, eleven counts of mail fraud, and three counts of aggravated identity theft, was sentenced by this court to an aggregate term of 65 months' incarceration in February 2021, and did not appeal from his sentence. As evident from just the year of the movant's sentence, there is a threshold issue presented by his motion because the Antiterrorism and Effective Death Penalty Act of 1996 generally requires such motions to be filed no later than one year from when the movant's judgment of conviction became final. Here, the movant acknowledges the facial untimeliness of his motion, but he asserts that the court should consider it to have been timely filed for a variety of reasons. The government opposes the motion, arguing, *inter alia*, (1) the motion is untimely, (2) the movant's claims are procedurally defaulted, and (3) the movant's claims are contrary to law and the established record in the case.

After thoroughly examining the movant's arguments, none of them warrant this court determining that he timely filed his motion. Therefore, the movant is not entitled to habeas relief because it plainly appears from the motion that it is untimely. Accordingly, the court will dismiss the motion.

## I.   PROCEDURAL HISTORY

On June 10, 2020, the government commenced this criminal matter via a criminal information charging the *pro se* movant, Jose Galindo ("Galindo"), with one count of conspiracy to commit mail and wire fraud,[1] one count of conspiracy to commit access device fraud,[2] eleven counts of mail fraud,[3] and three counts of aggravated identity theft.[4] *See* Doc. No. 1. On July 27, 2020, Galindo was arraigned, and he also entered guilty pleas on all counts in the criminal information. On this same date, the government's plea memorandum, the parties' guilty plea agreement, and Galindo's signed waiver of prosecution by indictment were also filed. *See* Doc. Nos. 6–8.

During the guilty plea colloquy, Galindo admitted to the following conduct as set forth by the government:

> Beginning on or before May 14, 2018, and continuing until approximately April 1, 2019, in Berks County, in the Eastern District of Pennsylvania, defendant GALINDO conspired and agreed, with co-conspirator Samantha Jones, charged separately, and others, to commit the crimes of mail fraud, wire fraud, and access device fraud. In summary, defendant GALINDO acquired the means of identification of other persons and utilized those means of identification to purchase and establish new NetSpend prepaid debit cards and RushCard prepaid debit cards in the names of those other persons, with the intention of using those prepaid debit cards (the "Fraudulent Prepaid Debit Cards") to defraud various merchants, including Amazon and Walmart. Defendant GALINDO loaded the Fraudulent Prepaid Debit Cards with cash. He also opened new Amazon customer accounts in the names of other persons that he used to buy goods from Amazon. Defendant GALINDO then purchased and otherwise obtained merchandise from merchants, including Amazon and Walmart, and paid for the merchandise using the Fraudulent Prepaid Debit Cards. The merchandise was shipped via the United States Postal Service ("USPS") or in interstate commerce via commercial interstate carriers, including Federal Express ("FedEx") and United Parcel Service ("UPS").
>
> Upon receiving the merchandise, defendant GALINDO contacted Amazon, Walmart, and other on-line merchants from whom he obtained merchandise, by

---

[1] 18 U.S.C. § 1349.
[2] 18 U.S.C. § 1029(b)(2).
[3] 18 U.S.C. § 1341.
[4] 18 U.S.C. § 1028A(a)(1).

placing telephone calls to, sending emails to, and initiating online chats with, the merchants, while posing as the merchandise recipients, and falsely claimed that the merchandise had never arrived or had arrived damaged, when in fact it had arrived in an undamaged condition. In this way, defendant GALINDO caused the merchants to ship multiples of the same item for no additional charge. Defendant GALINDO sold some of the items that he had fraudulently obtained from Amazon, Walmart, and the other online merchants by, among other things, listing those items for sale on eBay. Defendant GALINDO also sold many of the computer gaming consoles that he fraudulently obtained as part of the scheme to a video game store in Reading, Pennsylvania.

In order to keep the scheme operating long term, defendant GALINDO needed a steady stream of identities, because after a certain amount of fraud was committed with a given identity, the merchants, such as Amazon and Walmart, would flag that identity and stop sending items to that person. Many of the identities that defendant GALINDO used to further the fraud scheme as set forth herein were provided willingly by co-conspirators who agreed to provide their identities for defendant GALINDO to use to defraud merchants, in return for compensation. In addition, defendant GALINDO obtained additional identities from his step-daughter, Jones, who agreed that she would steal means of identification of residents of the assisted living facility ("ALF") in Reading, Pennsylvania, at which she worked and give it to defendant GALINDO so that he could use it to obtain merchandise by fraud as set forth herein. Jones was promised $500 for each identity she gave to defendant GALINDO, who knew that the identities defendant Jones was stealing belonged to real people who did not consent to allow him to use their identities. For her part, Jones knew that defendant GALINDO was going to use the identities in the manner set forth herein, as she was very familiar with his fraud scheme, which he had been operating for years.

In furtherance of the conspiracies charged in the Information, Jones and defendant GALINDO committed the following overt acts, among others, in the Eastern District of Pennsylvania:

1.      On April 18, 2017, defendant GALINDO used the means of identification of J.H., including a NetSpend prepaid debit card in the name of J.H. ending in 1341, to purchase a Sony PlayStation 4 Pro - 1TB game console for $399 from Amazon.

2.      Between April 19, 2017, and May 5, 2017, defendant GALINDO used the means of identification of J.H., coupled with a series of false representations, to cause Amazon to ship multiple replacement items at no charge and to issue multiple account credits, resulting in the receipt of $3,591 worth of free merchandise.

3.      On June 30, 2017, defendant GALINDO used the means of identification of Q.H., including a NetSpend prepaid debit card in the name of Q.H.

ending in 1989, to purchase a PlayStation 4 Pro 1TB game console for $399 from Amazon. On July 1, 2017, Amazon shipped this item to defendant GALINDO, posing as Q.H., at an address in Wernersville, PA, via USPS, tracking #9361289681090225039656.

4.      Between July 1, 2017, and July 7, 2017, defendant GALINDO used the means of identification of Q.H., coupled with a series of false representations, to cause Amazon to ship multiple replacement items at no charge and to issue multiple account credits, resulting in the receipt of $1,596 worth of free merchandise.

5.      On August 6, 2017, defendant GALINDO, used the means of identification of J.R., coupled with series of false representations, to cause Amazon to ship a PlayStation 4 Pro 1TB game console, retail value $399, to defendant GALINDO, posing as J.R., at an address in Ephrata, PA, via USPS, tracking #9361289681090245439511.

6.      On October 10, 2017, defendant GALINDO used the means of identification of R.A., including a NetSpend prepaid debit card in the name of R.A. ending in 9802, to purchase a PlayStation 4 Pro 1TB game console for $399 from Amazon.

7.      Between October 12, 2017, and October 20, 2017, defendant GALINDO used the means of identification of R.A., coupled with a series of false representations, to cause Amazon to ship multiple replacement items at no charge and to issue multiple account credits, resulting in the receipt of $2,094 worth of free merchandise.

8.      On December 27, 2017, defendant GALINDO caused a NetSpend prepaid debit card ending in 2019 to be mailed from NetSpend in Austin, Texas, to defendant GALINDO in Wernersville, Pennsylvania.

9.      On February 26, 2018, defendant GALINDO used the means of identification of J.R., including a NetSpend prepaid debit card in the name of J.R. ending in 2019 to purchase a Nintendo Switch game console for $299 from Amazon. On February 28, 2018, Amazon shipped this item to defendant GALINDO, posing as J.R., at an address in Wernersville, PA, via USPS, tracking #9361289681090377613216.

10.      Between February 28, 2018, and March 25, 2018, defendant GALINDO used the means of identification of J.R., coupled with a series of false representations, to cause Amazon to ship multiple replacement Nintendo Switch game consoles at no charge, resulting in the receipt of a total of $1,196 worth of free merchandise. One of the items of free merchandise was a Keurig K155 Office Pro Single Cup Commercial K-Cup Pod Coffee Maker, which was shipped from

Amazon on March 22, 2018 to defendant GALINDO, posing as J.R., at an address in Reading, PA, via UPS, tracking #1Z305Y4W0314872616.

11.     On March 15, 2018, defendant GALINDO used the means of identification of J.R., including a NetSpend prepaid debit card in the name of J.R. ending in 2019, to purchase a Nintendo Switch game console for $315 from Walmart.com.

12.     Between March 20, 2018, and April 30, 2018, defendant GALINDO used the means of identification of J.R., coupled with a series of false representations, to cause Walmart to ship multiple replacement items at no charge and to issue multiple account credits, resulting in the receipt of $4,725 worth of free merchandise and credit.

13.     On April 8, 2018, defendant GALINDO used the means of identification of N.E., including a RushCard in the name of N.E. ending in 5971, to purchase a Nintendo Switch game console for $300 from Amazon.

14.     Between April 11, 2018, and May 11, 2018, defendant GALINDO used the means of identification of N.E., coupled with a series of false representations, to cause Amazon to ship multiple replacement items at no charge and to issue multiple account credits, resulting in the receipt of $1,196 worth of free merchandise. One of these items was a Nintendo Switch game console, retail value $300, shipped from Amazon on April 13, 2018, to defendant GALINDO, posing as N.E., at an address in Wernersville, PA, via UPS, tracking #1Z306A401379629324.

15.     Or about May 22, 2018, at ALF in Reading, Pennsylvania, co-conspirator Jones printed out the means of identification, including the names, dates of birth, and social security numbers, of the following present and former residents of ALF, without the knowledge and consent of ALF or the victims: R.D., T.H., J.B., and J.T.

16.     On May 22, 2018, in Robesonia, Pennsylvania, Jones gave the ALF printouts of the means of identification, including the names, dates of birth, and social security numbers, of R.D., T.H., J.B., and J.T. to defendant GALINDO in return for the promise of $500 per identity. At the time he received and possessed these means of identification, defendant GALINDO knew they belonged to real people and he intended to (and subsequently did) use them to further his mail fraud, wire fraud, and access device fraud schemes, as set forth herein.

17.     On June 9, 2018, defendant GALINDO activated a NetSpend prepaid debit card ending in 9409, in the name of C.V., that defendant GALINDO had caused to be mailed to him by NetSpend from Austin, Texas, to Wernersville, PA.

18.     On June 24, 2018, defendant GALINDO activated a NetSpend prepaid debit card ending in 3608, in the name of J.B., using the means of identification, including J.B.'s name, date of birth, and social security number, provided by Jones.

19.     On June 26, 2018, defendant GALINDO used the means of identification of J.B. and the NetSpend prepaid debit card in the name of J.B. ending in 3608 to purchase an Apple iPad for $348 from Walmart.com.

20.     On June 28, 2018, defendant GALINDO contacted Walmart.com via telephone, posed as the husband of J.B., and falsely claimed that the Apple iPad screen delivered that day was cracked, when in fact it was in perfect condition.

21.     On July 2, 2018, defendant GALINDO, through the submission of numerous false statements to Walmart, caused Walmart to refund $348 to the NetSpend prepaid debit card ending in 3608.

22.     Between July 3, 2018, and July 10, 2018, defendant GALINDO used the means of identification of J.B. provided by Jones, coupled with a series of false representations, to cause Walmart to ship multiple replacement items at no charge, resulting in the receipt of $948 worth of free merchandise. One of these items was a Nintendo Switch game console, retail value $317, shipped from Walmart on July 5, 2018, to defendant GALINDO, posing as J.B., at an address in Robesonia, PA, via FedEx, tracking #439952864429.

23.     On July 6, 2018, defendant GALINDO used the means of identification of J.B. provided by Jones to establish a new Amazon account in J.B.'s name.

24.     Between July 8, 2018, and August 1, 2018, defendant GALINDO used the means of identification of J.B. provided by Jones, coupled with a series of false representations, to cause Amazon to ship multiple replacement items at no charge and to issue multiple account credits, resulting in the receipt of $2,093 worth of free merchandise and credit.

25.     On July 10, 2018, defendant GALINDO used the means of identification of C.V., including a NetSpend prepaid debit card in the name of C.V. ending in 9409, to purchase an Xbox One X 1TB game console for $499 from Amazon. This item was shipped by Amazon on July 12, 2018, to defendant GALINDO, posing as C.V., at an address in Robesonia, PA, via USPS, tracking #9210890100502906367811.

26.     Between July 12, 2018, and July 14, 2018, defendant GALINDO used the means of identification of C.V., coupled with a series of false representations, to cause Amazon to ship multiple replacement items at no charge

and to issue multiple account credits, resulting in the receipt of $1,497 worth of free merchandise.

27.     On July 19, 2018, defendant GALINDO used the means of identification of F.C., including a RushCard prepaid debit card in the name of F.C. ending in 0748, to purchase a Nintendo Switch game console for $299 from Amazon. This item was shipped by Amazon on July 23, 2018, to defendant GALINDO, posing as F.C., at an address in Reading, PA, via UPS, tracking #1ZX5Y7830338556381.

28.     Between July 24, 2018, and July 25, 2018, defendant GALINDO used the means of identification of F.C., coupled with a series of false representations, to cause Amazon to ship multiple replacement items at no charge and to issue multiple account credits, resulting in the receipt of $598 worth of free merchandise.

29.     On August 15, 2018, defendant GALINDO activated a RushCard prepaid Visa debit card ending in 5045 in the name of R.D. using the means of identification, including R.D.'s name, date of birth, and social security number, provided by Jones.

30.     On September 7, 2018, defendant GALINDO activated a RushCard prepaid Visa debit card ending in 7980 in the name of T.H. using the means of identification, including T.H.'s name, date of birth, and social security number, provided by Jones.

31.     On September 7, 2018, defendant GALINDO used the means of identification of R.D. and the RushCard in the name of R.D. ending in 5045 to purchase a Nintendo Switch game console for $381 from Walmart.com.

32.     On September 8, 2018, defendant GALINDO used the means of identification of T.H. provided by Jones to establish a new Amazon account in T.H.'s name.

33.     Between September 8, 2018 and September 20, 2018, defendant GALINDO used the means of identification of T.H. provided by Jones, coupled with a series of false representations, to cause Amazon to ship multiple replacement items at no charge and to issue multiple account credits, resulting in the receipt of $793 worth of free merchandise and credit. These items included a Nintendo 3DS XL game console, retail value $150, shipped from Amazon on September 11, 2018, to defendant GALINDO, posing as T.H., at an address in Reading, PA via USPS.

34.     On September 11, 2018, defendant GALINDO used the means of identification of R.D. provided by Jones to pose as R.D., along with a series of false representations, to cause Walmart to ship at no charge an additional Nintendo

Switch game console with a retail value of $381 to defendant GALINDO, posing as R.D., at an address in Reading, PA, via UPS, tracking #1Z137F5E4200093711.

35.     On September 14, 2018, defendant GALINDO contacted Walmart, posed as R.D., and falsely claimed that the second Nintendo Switch game console shipped by Walmart never arrived because the box containing the console was empty, when in fact the second Nintendo Switch game console had arrived and was in perfect working condition.

36.     On September 14, 2018, defendant GALINDO used the means of identification of R.D. to pose as R.D. and filed a false police report in R.D.'s name with the West Reading Police Department in which defendant GALINDO falsely claimed the Nintendo Switch game system he had ordered from Walmart.com in the name of R.D. had been lost or stolen, when in fact defendant GALINDO had received it, all without R.D.'s knowledge and consent.

37.     Between October 9, 2018, and October 11, 2018, defendant GALINDO used the means of identification of T.H. provided by Jones, coupled with a series of false representations, to cause Walmart to ship multiple replacement items at no charge, resulting in the receipt of $672 worth of free merchandise.

38.     On November 29, 2018, defendant GALINDO used the means of identification of R.M., including a NetSpend prepaid debit card in the name of R.M. ending in 8167, to purchase a Nintendo Switch game console for $299 from Amazon.

39.     Between December 1, 2018, and December13, 2018, defendant GALINDO used the means of identification of R.M., coupled with a series of false representations, to cause Amazon to ship multiple replacement items at no charge and to issue multiple account credits, resulting in the receipt of $1,196 worth of free merchandise. These items included a Nintendo Switch game console, retail value $299, shipped from Amazon on December 3, 2018, to defendant GALINDO, posing as R.M., at an address in Reading, PA, via UPS, tracking #1Z069W5E1300770622.

40.     On January 11, 2019, in Spring Township, Berks County, Pennsylvania, defendant GALINDO possessed printouts from ALF in the names of R.D. and T.H. containing their means of identification, including names, dates of birth, and social security numbers, as well as two RushCard prepaid debit cards in the names of R.D. and T.H.

41.     On April 1, 2019, in Reading, Pennsylvania, defendant GALINDO possessed the following: (a) a NetSpend prepaid debit card ending in 3608 in the name of J.B.; (b) an ALF printout containing the means of identification of J.T.; (c) an M&T Bank card ending in 4483 in the name of J.R.; (d) a RushCard prepaid debit card ending in 0748 in the name of F.C.; (e) M&T Bank debit cards ending in

5794 and 8930, respectively, in the name of N.E.; (f) handwritten records containing the name, date of birth, and other means of identification for N.E.; (g) handwritten records containing the name, date of birth, and other means of identification of C.V., (h) handwritten records containing the name, date of birth, and other means of identification of J.H.; (i) a NetSpend prepaid debit card in the name of R.M.; (j) handwritten records containing the name, date of birth, and other means of identification for R.M.; (k) a NetSpend prepaid debit card ending in 8534 in the name of R.A.; and (l) handwritten records containing the name, date of birth, and other means of identification of R.A.

Between September 2016 and April 2019, defendant GALINDO's fraud caused Amazon to sustain actual losses of at least $32,708. Between October 2016 and October 2017, defendant GALINDO's fraud caused Walmart to sustain actual losses of at least $11,310. Between September 2016 and April 2019, defendant GALINDO earned at least $22,009 in proceeds from his fraud, and has agreed to forfeit this amount as part of his plea agreement.

Gov't's Guilty Plea Mem. at 7–16, Doc. No. 6.[5]

This court held a sentencing hearing on February 9, 2021.[6] The court sentenced Galindo to an aggregate term of incarceration for 65 months, which was to run consecutively to any sentence that he was currently serving in either the Berks County or Lancaster County Courts of Common Pleas. *See* J. at 3, Doc. No. 23. The court also imposed an aggregate term of three years of supervised release. *See id.* at 4.

The court entered Galindo's judgment of sentence on February 18, 2021. *See* Doc. No. 23. Galindo did not file an appeal from his convictions or sentence.[7] On February 26, 2023, Galindo filed the instant motion under 28 U.S.C. § 2255 to vacate, set aside, or correct sentence (the "Motion").[8] *See* Doc. No. 25. On May 1, 2023, the government filed its response in opposition.

---

[5] The court's review of the transcript of Galindo's change of plea hearing further confirms these facts. *See* Tr. of Change of Plea Hr'g at 59–73, Doc. No. 28.

[6] Prior to the sentencing hearing, the government filed its sentencing memorandum, and Galindo's counsel, Richard H. Mauer, Esquire, filed a sentencing memorandum and a supplemental brief on time credit issues for sentencing. *See* Doc. Nos. 12, 13, 19.

[7] The court notes the government's argument that Galindo's failure to file a direct appeal should result in his claims here being procedurally defaulted. *See* Gov't. Resp. Opp'n. at 17–22, Doc. No. 32. Because the court will dismiss the motion based on its untimeliness, the court does not reach the procedural default issue.

[8] The federal "prisoner mailbox rule" provides that a *pro se* prisoner's petition is deemed filed "at the time petitioner delivered it to the prison authorities for forwarding to the court clerk." *Houston v. Lack*, 487 U.S. 266, 275–76 (1988).

*See* Doc. No. 32. On June 28, 2023, Galindo filed a reply to the government's response. *See* Doc. No. 41.

## II.    DISCUSSION

### A.    Law Generally Applicable to Section 2255 Motions

Under 28 U.S.C. § 2255, a federal prisoner may move the sentencing court to vacate, set aside, or correct their sentence. Motions filed "pursuant to 28 U.S.C. § 2255 are the presumptive means by which federal prisoners can challenge their convictions or sentences that are allegedly in violation of the Constitution." *Okereke v. United States*, 307 F.3d 117, 120 (3d Cir. 2002) (citing *Davis v. United States*, 417 U.S. 333, 343 (1974)). A federal prisoner may file a section 2255 motion when: "(1) the sentence was imposed in violation of the Constitution or laws of the United States; (2) the court was without jurisdiction to impose such a sentence; (3) the sentence was in excess of the maximum authorized by law; or (4) the sentence is otherwise subject to collateral attack." *United States v. Kelley*, No. 3:12-CR-130, 2017 WL 1078172, at *2 (M.D. Pa. Mar. 22, 2017) (citing 28 U.S.C. § 2255(a)).

To obtain relief under section 2255, a movant must demonstrate a "fundamental defect which inherently results in a complete miscarriage of justice." *Hill v. United States*, 368 U.S. 424, 428 (1962). Further, the "error must present exceptional circumstances where the need for the remedy afforded by the writ of habeas corpus is apparent." *United States v. Williams*, 615 F.2d 585, 589 (3d Cir. 1980) (citations and internal quotation marks omitted).

Generally, a movant is entitled to a hearing on their section 2255 motion "[u]nless the motion and the files and records of the case conclusively show that the prisoner is entitled to no

---

Here, Galindo included a declaration that he placed his motion in the prison mail system on February 26, 2023. *See* Mot. Under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence by a Person in Federal Custody ("Mot.") at ECF p. 22, Doc. No. 25. As such, the court uses February 26, 2023, as the motion's filing date.

relief . . . ." 28 U.S.C. § 2255(b); *see also* Rules Governing Section 2255 Proceedings for the U.S. Dist. Cts., R. 4(b) ("If it plainly appears from the motion, any attached exhibits, and the record of prior proceedings that the moving party is not entitled to relief, the judge must dismiss the motion and direct the clerk to notify the moving party."). Accordingly, the court may dismiss a section 2255 motion without a hearing "where the record affirmatively indicates that the claim for relief is without merit." *Page v. United States*, 462 F.2d 932, 933 (3d Cir. 1972).

### B.    Analysis

### 1.    Timeliness of the Motion

Based on the court's review of the Motion, there is an obvious issue with its timeliness. Pursuant to the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), section 2255 motions filed by federal prisoners are generally subject to a one-year limitations period. *See* 28 U.S.C. § 2255(f). As to when this one-year limitation period begins to run, section 2255(f) provides, in relevant part:

The limitation period shall run from the latest of–

**(1)** the date on which the judgment of conviction becomes final;

**(2)** the date on which the impediment to making a motion created by governmental action in violation of the Constitution or laws of the United States is removed, if the movant was prevented from making a motion by such governmental action;

**(3)** the date on which the right asserted was initially recognized by the Supreme Court, if that right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or

**(4)** the date on which the facts supporting the claim or claims presented could have been discovered through the exercise of due diligence.

*Id.*

Galindo appears to recognize that his Motion is untimely if he were to attempt to invoke section 2255(f)(1).[9] *See* Mot. at ECF p. 21 (acknowledging that he "did not file a timely petition"). Further, he does not attempt to argue that the claims in the Motion are based on a right newly recognized by the United States Supreme Court, which the Court made retroactively applicable to cases on collateral review. *See* 28 U.S.C. § 2255(f)(3).

Instead, Galindo argues he is entitled to a later accrual date based on section 2255(f)(2) and section 2255(f)(4). As to the first, Galindo asserts that the Assistant United States Attorney prosecuting the case impeded him from filing the Motion. Specifically, Galindo states that

> [t]he government attorney's fraud as described in the petition misled [him] to believe that [his] plea, waivers, conviction, and sentence were binding, constitutional and valid. The government attorney's fraud and threat of long-term imprisonment if [he] collaterally attack [sic] [his] conviction and sentence lulled [him] to pursue [sic] [his] rights.

Mot. at ECF p. 21. Regarding the government attorney's "threat," Galindo asserts that "[t]he government attorney and [his] defense counsel threatened [him] with long[-]term imprisonment (251 years['] imprisonment)." These assertions are wholly insufficient to qualify for a later start date under section 2255(f)(2).

As indicated above, section 2255(f)(2) allows the one-year limitations period to run from "the date on which the impediment to making a motion created by governmental action in violation

---

[9] Even if Galindo did not recognize the facial untimeliness of the Motion, it would have been untimely filed under section 2255(f)(1). In this regard, the one-year period under subsection (f)(1) begins to run on "the date on which the judgment of conviction becomes final." 28 U.S.C. § 2255(f)(1). As to when a judgment of conviction becomes final, "[i]f a defendant does not pursue a timely direct appeal to the court of appeals, his or her conviction and sentence become final, and the statute of limitation[s] begins to run, on the date on which the time for filing such an appeal expired." *Kapral v. United States*, 166 F.3d 565, 577 (3d Cir. 1999). A criminal defendant generally has 14 days from "the judgment or the order being appealed" to file a notice of appeal. Fed. R. App. P. 4(b)(1)(A)(i).

Here, judgment on Galindo's convictions and sentence was entered on February 18, 2021. *See* Doc. No. 23. As such, Galindo had until no later than March 4, 2021, to file a direct appeal. Since he did not file a direct appeal, Galindo's judgment of sentence became final for purposes of subsection (f)(1) on March 4, 2021, and he would have had until March 4, 2022, to file a section 2255 motion. Galindo filed this Motion almost a year after the expiration of the statute of limitations. Therefore, it is untimely under section 2255(f)(1).

of the Constitution or laws of the United States is removed, if the movant was prevented from

making a motion by such governmental action[.]" 28 U.S.C. § 2255(f)(2). A movant seeking "to

invoke [s]ection 2255(f)(2) . . . [must] allege (1) the existence of an impediment to [their] making

a motion, (2) governmental action in violation of the Constitution or laws of the United States that

created the impediment, and (3) that the impediment prevented the prisoner from filing [the]

motion." *Simmons v. United States*, 974 F.3d 791, 796–97 (6th Cir. 2020) (citation omitted); *see

also Gantt v. United States*, Civ. No. 11-6191, 2014 WL 6471478, at *3 (D.N.J. Nov. 18, 2014)

("While the Third Circuit has not addressed the issue, the text of § 2255(f)(2) suggests that the

impediment must be government-created, violative of the Constitution, and actually prevent the

filing of a motion to vacate." (citations omitted)). Thus, the movant "must show a causal

connection between the unlawful impediment asserted and [their] failure to timely file [their] §

2255 [motion]." *United States v. Latin*, Crim. No. 17-514, Civ. No. 21-453, 2022 WL 676670, at

*4 (D. Haw. Mar. 7, 2022) (citation omitted); *Simmons*, 974 F.3d at 797 (explaining that section

2255 movant "had to allege why his supposed impediment prevented him from filing earlier. In

other words, to satisfy [s]ection 2255(f)(2), he had to allege a causal connection between the

purportedly inadequate resources at the state facilities and his inability to file his motion on time");

*see also Bryant v. Ariz. Atty. Gen.*, 499 F.3d 1056, 1060 (9th Cir. 2007) (explaining that "[t]o

obtain relief under [28 U.S.C.] § 2244(d)(1)(B), the petitioner must show a causal connection

between the unlawful impediment and [their] failure to file a timely habeas petition").[10]

---

[10] AEDPA also provides for a one-year limitations period on "an application for a writ of habeas corpus by a person
in custody pursuant to the judgment of a State court." 28 U.S.C. § 2244(d). Section 2244(d)(1)(B), which allows the
one-year limitations period to accrue on "the date on which the impediment to filing an application created by State
action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from
filing by such State action," 28 U.S.C. § 2244(d)(1)(B), is "the analogous provision to [section 2255(f)(2)] applicable
to state prisoners seeking habeas corpus relief." *Stephen v. United States*, 519 F. App'x 682, 684 (11th Cir. 2013) (per
curiam) (citations omitted); *see also Clay v. United States*, 537 U.S. 522, 528 (2003) (explaining that "time triggers"
in section 2244(d)(1)(B)–(D) "closely track" section 2255(f)(2)–(4)). To date, the Third Circuit Court of Appeals has
not addressed the meaning of the phrase "impediment to filing" under section 2244(d)(1)(B). *See Pabon v. Mahanoy*,

Here, Galindo does not allege or explain how the supposed threat by the Assistant United States Attorney of a 251-year sentence – a "threat" which occurred *before* his sentencing hearing – impeded him from filing his Motion. Starting with the alleged threat itself, Galindo has not plausibly alleged that any threat occurred. Rather, he is merely contorting the reference to his statutory maximum possible aggregate sentence as a threat. More specifically, Galindo's offenses carried with them the following maximum terms of imprisonment: one count of conspiracy to commit mail fraud, 18 U.S.C. § 1349 (20 years); eleven counts of mail fraud, 18 U.S.C. § 1341 (20 years per count; total: 220 years); one count of conspiracy to commit access device fraud, 18 U.S.C. § 1029(b)(2) (five years); and three counts of aggravated identity theft, 18 U.S.C. § 1028A(a)(1) (two years per count; total: six years). Thus, the total maximum sentence the court could have imposed was indeed 251 years. That the Assistant United States Attorney or Galindo's own counsel mentioned this number does not a threat make. Nor does it qualify as an "impediment to making a motion created by government action," particularly when this fact was well known to Galindo *prior* to his sentencing. 28 U.S.C. §2255(f)(2). Accordingly, section 2255(f)(2) is not a proper avenue through which Galindo may save the untimeliness of the Motion.

Galindo also appears to allege he is entitled to a later accrual date under section 2255(f)(4) insofar as "[i]t took 2 years of legal research and understanding to discover and untangle the government attorney's fraud due to the complete nature of the fraud." Mot. at ECF p. 21. As with his prior attempts, his allegations here are insufficient to qualify for a later start date under section 2255(f)(4).

Section 2255(f)(4) is another of the "three limited, alternative circumstances in which the one-year limitations period will begin to run," *United States v. Green*, 898 F.3d 315, 318 (3d Cir.

---

654 F.3d 385, 404 (3d Cir. 2011) (acknowledging that "[o]ur Court has not addressed the meaning of 'impediment to filing' under § 2244(d)(1)(B)" but declining to "reach the issue here").

2018), and which allows the limitations period to begin to run on "the date on which the facts supporting the claim or claims presented could have been discovered through the exercise of due diligence." 28 U.S.C. § 2255(f)(4). Under section 2255(f)(4), "the prisoner has one year to file from the date on which he should have discovered the facts underlying the claims made in the § 2255 motion." *United States v. Johnson*, 590 F. App'x 176, 178–79 (3d Cir. 2014) (citing *Wims v. United States*, 225 F.3d 186, 190 (2d Cir. 2000)). The duty to exercise due diligence required by section 2255(f)(4) begins to run when the movant "'is in a position to realize that [they have] an interest in pursuing further action." *Bracey v. Superintendent Rockview SCI*, 986 F.3d 274, 287 (3d Cir. 2021) (quoting *Johnson v. United States*, 544 U.S. 295, 308 (2005)). "Thus, until something in the [movant]'s case 'clearly shows that diligence is in order,' § 2255(f)(4) will not be triggered." *Id.* (quoting *Johnson*, 544 U.S. at 308) (other citation omitted).

In the Motion, Galindo does not put forward any facts that could not have been discovered, or indeed were not actually known to him, at the time his conviction became final in early March 2021. He advances the conclusory justification that the "Government attorney's fraud . . . misled me to believe that my plea, waivers, conviction and sentence were binding, constitutional and valid," Mot. at ECF p. 21, and that he was therefore operating under "the mistaken impression that the process was constitutional." *Id.* at ECF p. 19. Fatal to Galindo's attempt at a timely motion is the lack of any supporting facts tending to show fraud, or how his asserted grounds for relief could not have been discovered until February 26, 2022, and thereby allow for a timely filing deadline of February 26, 2023. Galindo's bald assertion that it took him two years of "legal research and understanding" to "discover and untangle" the alleged constitutional violations and unspecified government fraud, *id.* at ECF p. 21, is simply not enough to trigger the later start date in section 2255(f)(4). *See Palmer v. Hendricks*, 592 F.3d 386, 395 (3d Cir. 2010) ("We have repeatedly

emphasized that bald assertions and conclusory allegations do not afford a sufficient ground for an evidentiary hearing on a habeas petition." (citations and internal quotation marks omitted). Instead, everything he asserts was known, or at worst capable of being known, at the time judgment was entered on February 18, 2021.

> **2.    Whether Equitable Tolling Applies to Save the Untimely Motion**

Although the section 2255 motion is untimely, the court may still consider the merits of Galindo's argument if there is a basis to equitably toll the limitations period. The AEDPA's one-year limitations period is "subject to equitable tolling in appropriate cases." *Holland v. Florida*, 560 U.S. 631, 645 (2010). "Generally, a litigant seeking equitable tolling bears the burden of establishing two elements: (1) that [they have] been pursuing [their] rights diligently, and (2) that some extraordinary circumstance stood in [their] way." *Pace v. DiGuglielmo*, 544 U.S. 408, 418 (2005) (citing *Irwin v. Dep't of Veterans Affairs*, 498 U.S. 89, 96 (1990)). As to the first element, the "diligence required for equitable tolling purposes is reasonable diligence, not maximum, extreme, or exceptional diligence." *Ross v. Varano*, 712 F.3d 784, 799 (3d Cir. 2013) (citing *Holland*, 560 U.S. at 653). A reasonable diligence determination is "a subjective test: it must be considered in light of the particular circumstances of the case." *Id.* (citations omitted). In evaluating the second element, a litigant must "in some extraordinary way [have] been prevented from asserting [their] . . . rights." *Oshiver v. Levin, Fishbein, Sedran & Berman*, 38 F.3d 1380, 1387 (3d Cir. 1994) (citations omitted), *overruled in part on other grounds by Rotkiske v. Klemm*, 890 F.3d 422, 428 (3d Cir. 2018) (en banc).

In this case, other than his assertion that he spent two years doing research, Galindo sets forth no facts that he was pursuing his rights diligently, and nothing in the Motion suggests extraordinary circumstances delayed its filing. *See* Mot. at ECF p. 25. Therefore, the court finds

this matter does not warrant equitable tolling of the one-year statute of limitations. Accordingly, because the Motion is untimely, the court must dismiss it.[11]

### 3.     Issuance of a Certificate of Appealability

The court will also decline to issue a certificate of appealability ("COA") under 28 U.S.C. § 2253. After denying a section 2255 motion, a district court must determine whether a COA should issue. *See* 3d Cir. Loc R. App. P. 22.2 ("At the time a final order denying a petition under 28 U.S.C. § 2254 or § 2255 is issued, the district judge will make a determination as to whether a [COA] should issue."). A district court may only issue a COA "if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). When deciding whether to issue a COA after a dismissal on procedural grounds, the court recognizes that

> [w]hen the district court denies a habeas petition on procedural grounds without reaching the prisoner's underlying constitutional claim, a COA should issue when the prisoner shows, at least, that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling. . . . Where a plain procedural bar is present and the district court is correct to invoke it to dispose of the case, a reasonable jurist could not conclude either that the district court erred in dismissing the petition or that the petitioner should be allowed to proceed further. In such a circumstance, no appeal would be warranted.

*Slack v. McDaniel*, 529 U.S. 473, 484 (2000).

Here, a plain procedural bar is present. As discussed above, the Motion is untimely under any provision of 28 U.S.C. 2255(f). The Motion also does not contain a "valid claim of the denial of a constitutional right" which, if present, may bring into question this court's ruling based on procedural grounds. *Id.* Additionally, the court does not find that a reasonable jurist would disagree

---

[11] Additionally, even if the court were to consider the merits of Galindo's motion, nothing in the motion would merit a hearing as the record conclusively shows that he is not entitled to relief. *See* 28 U.S.C. § 2255(b); *Page v. United States*, 462 F.2d 932, 933 (3d Cir. 1972).

with the court's assessment and resolution of the Motion. For these reasons, the court will not issue a certificate of appealability.

### III.   CONCLUSION

As explained in more detail above, the Motion is untimely and equitable tolling is unwarranted. Accordingly, the court must dismiss the Motion. The court also will decline to issue a certificate of appealability.

A separate order follows.

BY THE COURT:

/s/ *Edward G. Smith*
EDWARD G. SMITH, J.